# Morris's Appeal.

1. A general order of discharge from Washington to "The Philadelphia Troop of Light Horse," was in possession of E., a descendant of M., who was captain when it was issued. *Held,* under the circumstances of this case to be the property of E.

2. The possessor in 1823, a descendant of M., claimed to be the owner of the "order;" he and his descendants retained it adversely and with the knowledge of the troop till 1866, when suit was brought for its possession. *Held,* that if originally a bailment in M. for the troop, the trust had ended.

February 21st 1871.  Before THOMPSON, C. J., AGNEW, SHARS-WOOD and WILLIAMS, JJ.  READ, J., at Nisi Prius.

Appeal from the decree at Nisi Prius: In Equity: No. 22, to January Term 1867.

The bill was filed November 13th 1866, by The First Troop Philadelphia City Cavalry against Samuel Morris and Elliston P. Morris.  It set out:—

1. That in the year 1774 a military company was formed by twenty-six gentlemen of Philadelphia, under the name of the " Philadelphia Troop of Light Horse," for defence of the rights of the country threatened by the arbitrary legislation of Great Britain; that it was organised by the election of officers, and was officially recognised by the military authorities until April 4th, 1863, when it was incorporated by the legislature of Pennsylvania under the title of " The First Troop, Philadelphia City Cavalry."

2. That said troop served voluntarily, and without pay, furnishing their own horses and equipments during the campaigns of the Revolutionary war, from 1776 to 1783, and by their gallantry and discipline, gained the approbation of Washington, as Commander-in-Chief, and enjoyed his friendship, until his death. They have since participated in the wars of 1812, '13 and '14, and of the late rebellion.

3. That during the campaign of 1777, the then Captain of the Troop, Samuel Morris, received an official letter from General Washington, as Commander-in-Chief, dated January 23d 1777, at Headquarters, which was an official letter from the highest officer of the armies, to the official head of the said Troop, and containing an order regulating the disposition of said Troop, and expressing the thanks of the General, to " the gentlemen who compose the Troop, for the essential services they have rendered their country."

4. That said letter (a copy of which was annexed to the bill), was directed to " the Philadelphia Troop of Light Horse," the same since incorporated as " The First Troop Philadelphia City Cavalry," and being an official order to the Troop, and fixing its rights and duties, in military law and usage, it properly and of right, belonged to the Troop, and to its military archives.

5. That said letter was received by Captain Morris, in trust for the use and benefit of the Troop, and as their property; and had recently come into the possession or custody of the defendants, with full notice of the trust impressed upon it, and without paying any valuable consideration therefor, and though requested, they had refused to surrender it.

The prayers were that the defendants be ordered to produce the said original letter, and to surrender the same to the plaintiffs, and that the same may be decreed to be their absolute property;—and for general relief.

18 P. F. SMITH—2

Copy of the letter referred to in the bill:—

"The Philadelphia Troop of Light Horse, under the command of Captain Morris, having performed their tour of duty, are discharged for the present.

"I take this opportunity of returning my most sincere thanks to the captain, and to the gentlemen who compose the Troop, for the many essential services which they have rendered their country, and to me personally, during the course of this severe campaign. Though composed of gentlemen of fortune, they have shown a noble example of discipline and subordination, and in several actions have shown a spirit and bravery which will ever do honor to them, and will ever be gratefully remembered by me.

GEORGE WASHINGTON.

"Head-quarters, Morristown,
        "January 23, 1777."

The answer, with unimportant qualifications, admitted the 1st, 2d and 3d paragraphs of the bill.

4. The original letter is written on a half sheet of foolscap paper, and is without address other than the foregoing copy discloses. It has been pasted on a piece of thin cotton cloth; on this cloth are endorsed the names of the gentlemen of the troop. Thus

"Samuel Morris, Captain. John Dunlap," and 16 others.

At what date this was done, respondents do not know, but they believe it was done at the time the letter from Captain Dunlap, presently to be given, was written. The same names are engraved on the plate referred to in Captain Dunlap's letter. We believe the letter to have been addressed to Captain Morris, of the Philadelphia Troop of Light Horse, which said Troop of Light Horse was *not the same* since incorporated as "The First Troop of Philadelphia City Cavalry," &c. We deny that the particular letter in question belongs to the complainants, or to their military archives.

5. The original letter is in the possession of the defendant, Elliston P. Morris, and belongs to him only.

6. It cannot, at this late day, be clearly shown in whose possession the letter was from the time it was received by Captain Morris until the death of General Washington. In 1794 John Dunlap was elected Captain, and held the office until November, 1803. Captain Morris and Captain Dunlap both died in the year 1812. After the death of General Washington, Captain Dunlap wrote the following letter without date to Captain Morris, which is in the possession of the defendant, Elliston P. Morris:—

"Dear Sir:—I have caused a silver plate, ornamented with gold, to be prepared of such dimensions as to admit in the centre thereof, a most exact likeness of the late illustrious Washington, who was the *Prop and Glory* of this western world; The magnanimous supporter and defender of Rational Liberty—In whom

were combined the talents of the Warrior—the Philosopher and the Legislator.

"The words of the discharge, given by that disinterested Hero to you, after the hazardous and ever memorable campaign of the years 1776 and 1777, with the names of the gentlemen under your mild but firm command, I have also caused to be elegantly engraved on the plate. A recess is formed on the back of the plate to admit and preserve the original, which should be, as far as in our power, protected from accident or injury.

"My veneration for the memory of our beloved departed chief and regard for you, my much valued Friend, induced me to have this plate, portrait and discharge executed in the manner you will herewith find them.

"As a testimony of merited esteem, accept this plate, &c., from your affectionate

"JOHN DUNLAP.

"Sam'l Morris, Esq."

7. From the time that letter was written to the present, the letter of General Washington, and the case referred to in Captain Dunlap's letter, have been in the possession of Captain Morris and his descendants to the fourth generation, and are now in the possession of the defendant, Elliston P. Morris, his great-grandson.

8 and 9. A committee to search for original documents and property of the Troop reported on the 22d of February 1823, that Luke W. Morris, a son of Captain Samuel Morris, had in his possession, the letter of Captain Dunlap, and the silver case mentioned in it:—

"It appears from them that the case was made at the expense of Captain Dunlap, and presented by him to Captain Samuel Morris as a mark of his private friendship, and for the purpose of containing the original letter of discharge from General Washington to those gentlemen of the Troop who served in the campaign of 1776 and 1777. Mr. Morris considers both the silver case and the letter of discharge as the property of his family, and is not now willing to part with either to the Troop, though we have his assurance that if they ever part with them it will be to the Troop only. The letter of discharge was not in the case, and has been mislaid in the hands of some of his family, and he expects to find it. * * *

"Unanimously Resolved, therefore, That the Troop have no claim upon the silver case or the letter of discharge, but will be well pleased to receive either at any time from Mr. Morris; that a copy of the above report and resolution be forwarded to Mr. Morris."

The report and resolution are in the possession of Elliston P. Morris, the grandson of Luke W. Morris.

[Morris's Appeal.]

. Luke W. Morris by letter acknowledged the receipt of the report and resolution and wrote:— * * *

" To comply with any request of the gentlemen of the Troop would afford me much gratification, and as the value placed upon this discharge by myself and by my family will prevent its passing from our hands, I have caused an engraved copperplate fac simile of the same to be' well executed by one of our best artists, of which and some impressions thereof permit me to request an acceptance by the Troop."

To this letter a committee of the Troop replied,, January 30th 1824, acknowledging the donation, and saying:— * * *

" This gift, sir, is invaluable, and must excite in us an emulation to be deserving of the like praise, should our country again be in need of our services, and we consider ourselves greatly indebted to you for a gift so eminently calculated to maintain the ' *esprit du corps*,' and excite in us a determination to profit by. the bright example of our predecessors, among the most conspicuous of whom we rank Captain Morris." * * *

Nothing further took place in relation to this letter until after the death of Luke W. Morris, when a committee of the Troop, on the 6th of April 1853, wrote to Samuel B. Morris, his son and the father of the respondents, informing him that they had been appointed " to search for and obtain all documents, &c., belonging to the Troop, &c., with a view to their preservation," &c., and saying:— * * *

" The undersigned have learned that the original discharge of the Troop from General Washington is in your possession, and held by you as the descendant of Captain Samuel Morris, its commanding officer during the Revolutionary War. * * * To any American it is of value, but to the party to whom it belongs it possesses an unusual interest. We feel that in apprising you of the desire of the Troop as expressed above, that half their object is accomplished in simply calling your attention to the fact of the discharge being addressed to the Troop, or to Captain Morris as its commanding officer, relying confidently upon that strict sense of honor and rectitude of conduct for which, as an American gentleman, you stand pre-eminent.

" We would therefore respectfully ask an interview with you at such time and place as is most convenient to yourself in relation to the above," &c.

In reply Mr. Morris proposed a meeting at his own house on the 16th of the same month.

The committee, on the 4th of October 1853, again wrote to Samuel B. Morris, asserting the right of the Troop to the possession of Washington's letter and asking its delivery to them; averring amongst other reasons for claiming its possession, that the Troop had no other evidence of their honorable discharge from service at the close of the campaigns.

[Morris's Appeal.]

Samuel B. Morris replied to the committee, October 31st 1853, referring to the terms of Captain Dunlap's letter as showing that Washington's letter was to Captain Morris personally, and to the report of the committee and the resolution of the troop in 1823 as recognising the right of Luke W. Morris to the letter; also to the fact that it had been in possession of his family for more than three-quarters of a century, and averred that the company had no right to the letter. Yet being unwilling that it should be supposed that he wished to retain what was not his own, proposed to submit the matter to Horace Binney or William M. Meredith.

The Troop declined a reference to either of the gentlemen named, but proposed General Winfield Scott as referee. On the 14th of February 1854, Samuel B. Morris declined submitting the matter to General Scott, and informed the Troop that he had laid all the documents and the correspondence before Henry J. Williams, Esq., and transmitted to the Troop the written opinion of Mr. Williams, which was that Mr. Morris was the proper owner of the Washington letter.

10. They denied that the letter had been received by Captain Morris in trust for the Troop, or had come into their custody with a trust impressed upon it, and averred that it had come into their possession on the death of Samuel B. Morris, their father, in January 1859, as part of his estate, having been bequeathed to him by the will of Luke W. Morris, proved June 15th 1830, and that it had been allotted to Luke in the distribution of the estate of his father Captain Samuel Morris. In the settlement of the estate of Samuel B. Morris, the case and letter became the property of the defendant Elliston P. Morris, and are now in his possession.

11. Set up the Statute of Limitations.

A replication was filed and an examiner appointed. In addition to the facts appearing in the pleadings he reported other evidence not materially varying the effect of those facts. The case came up on bill, answer and evidence, and it was decreed, *pro formâ*, that the prayer of the complainant be granted.

The defendants appealed.

*P. P. Morris*, for appellants.

*E. Waln*, for appellees, as to right of property in a letter, cited Eyre *v.* Higbee, 15 How. (N. Y.) Prac. R. 45; Woolsey *v.* Judd, Id. 56; Evans *v.* Vanhall, 1 Clark's Ch. Prac. R. 22; Eyre *v.* Higbee, 22 Barb. 502.

The opinion of the court was delivered, March 2d 1871, by

SHARSWOOD, J.—In 1774, a number of gentlemen of Philadelphia formed a volunteer company of cavalry, and tendered their

[Morris's Appeal.]

services to the Continental Congress. They called themselves "The Philadelphia Troop of Light Horse." They served during several years of the war of the Revolution. At the close of the campaign of 1776–7, perhaps the most arduous of the whole contest, General Washington, by a general order after the performance of their tour of duty, discharged them from the service for the time being, and in doing so took occasion to compliment them in high terms for their discipline and bravery. The document is not a letter addressed either to the Troop, or their commander; but just what I have designated it, a "general order," concluding formally, as all such orders do : " Given at Headquarters at Morristown, this 23d January 1777." That this general order should be transmitted to the captain of the Troop, to be read at their head, was in the usual course of military procedure. It would be a very curious question and not easy on principle or authority to determine, in whom the property of the paper vested, when it was so transmitted. It may be that the gentlemen then composing the Troop would be joint owners ; and then it would seem to follow, that whoever had possession might hold it as against the other proprietors, but that on his death it would go to the survivors ; any one obtaining possession having a right to keep it, until the last survivor, who could make what use he pleased of the document, being accountable to no one. This would be to apply to it the rule of property as to chattels jointly owned. But then came in the Act of Assembly, passed March 31st 1812, 5 Smith 395, which converted all joint tenancies then existing, whether in lands or chattels, into tenancies in common, and abolished the right of survivorship. It appears, however, very clearly, that from the earliest period, not only the custody and possession, but the property was recognised to be in Samuel Morris, then the captain of the troop. The circumstances clearly evince that this was acquiesced in by all the gentlemen interested. Captain Morris resigned his command in 1783. In 1794, John Dunlap was chosen captain. Some time afterwards, within a short period, he had prepared, as it would seem at his own expense, a silver plate, so as to admit a likeness of General Washington, and had engraved on it the words of the general order of discharge, together with the names of the gentlemen members of the Troop at the time it was issued. In a letter to him, without date, Captain Dunlap requests Captain Morris to accept this plate " as a testimony of merited esteem." On the reverse of the plate, is also engraved these words : " As a testimony of attachment to my valued friend, Captain Samuel Morris, and for the better preservation of the certificate from our beloved general, in which the feelings of the gentlemen of the Troop and of myself are interested, I have caused it to be engraven on this plate, of which I ask his acceptance. JOHN DUNLAP." The letter before referred to also states : " A

recess is formed on the back of the plate to admit and preserve the original, which should be, as far as in our power, protected from accident or injury." It is not a subject of contention, and cannot be, that the silver case was presented to, and became the private property of Captain Morris. What could well be more absurd than the idea that the silver case should be owned and possessed separate and apart from the paper it was made for the purpose of preserving? There are no minutes extant of the Troop at that period, but it is not to be supposed for a moment, from the character of the gentlemen and the nature of the transaction, that this thing was done in a corner. It was no doubt known to all the members of 1777, who were then surviving, and met their entire approbation. From that time down to 1823, no question was mooted upon the subject. Captain Morris died in 1812. In 1815, it appears that the corps took the name of the First Troop Philadelphia City Cavalry, in consequence, no doubt, of other similar troops having been formed. It was incorporated by that title by an Act of Assembly, passed April 4th 1863, Pamph. L. 289. Were it at all material, there would perhaps not be much difficulty in tracing and making out the succession of the incorporated body to all the rights of property of the voluntary association, though the name was changed. It is not, however, important. If the property of the paper in question ever was in the association, or if there was ever a trust for them, what was done by them in 1823 put an end to their claim. They then appointed a committee "to search for original documents and property of the Troop," who reported the facts of the case in regard to this order of discharge, stating that it was in the possession of Luke W. Morris, a son of Captain Morris, and that he considered "both the silver case and the letter of discharge, as the property of his family." Upon which report a resolution was adopted by the Troop, that they "have no claim upon the silver case or the letter of discharge." Now if they had any title before, here is a clear relinquishment to the family of Captain Morris—a gift, or what is the same thing, a solemn admission of a previous gift. On the other hand, not putting this, which seems to be the most natural, construction upon it, we have here a distinct assertion by Luke W. Morris of his absolute property, with no trust expressed—acquiesced in by the Troop, upon the faith of which he had a fac simile of the order engraved, and a number of copies struck off and presented to them. Surely if it was a deposit or bailment before, to which any trust attached, which would prevent the bar of the Statute of Limitations, such a relation ended at that time. Here was an open, express denial of the right of the plaintiffs, followed by exclusive adverse possession, and full knowledge on the part of the cestuis que trust: Hill on Trustees 264, note. They lie by forty-three years, without instituting any proceedings

either at law or in equity, to assert their alleged title, and it would be contrary to all principle and every decided case, to listen to them at so late a day.

Decree reversed, and now it is ordered and decreed that the bill be dismissed with costs.